In re: Petition for Review Pursuant to
§ 39–1–30 of Ordinance Adopted by
the City of Providence.

No. 99–405–M.P.

Supreme Court of Rhode Island.

Feb. 11, 2000.

Richard G. Riendeau, John T. D'Amico, Jr., Providence, for Plaintiff.

Jeffrey H. Gladstone, Dennis J. Duffy, Brian C. Newberry, Providence, Kevin J. McNeeley, Jeanne Conroy, for Bell Atlantic.

Patricia M. French, Providence, Brian T. Fitzgerald, Nielle M. Kinsch, for Cox RI Telcom. LLC.

James M. Sloan, III, Richard A. Licht, Peter V. Lacouture, Providence, Francis X. Flaherty, Warwick, William F. Holt, George E. Lieberman, Dennis J. Duffy, Kathryn Smart Holley, Providence, for In, re Petition.

Ronald Gerwatowski, for Narragansett Electric Co.

Adrienne G. Southgate, Providence, for Public Utilities Commission.

Alycia Lyons Goody, Providence, for Providence Gas.

Paul J. Roberti, Elizabeth A. Kelleher, Providence, for State of RI.

Wallis Koutsogiane, for Valley Resources, Inc.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, Justice.

This case reflects the frustration of residents, travelers, and municipalities suffering the effects of rutted streets and sidewalks caused by delayed or faulty res-

torations following excavations.[1] The City of Providence (city or Providence) has sought our review of the Public Utilities Commission's nullification of a city ordinance regulating these excavations. In support of its petition for certiorari, Providence argued that the Public Utilities Commission (PUC or commission) lacked jurisdiction to review the ordinance, and in its review, applied an incorrect legal standard and improperly shifted the burden of persuasion in reviewing the ordinance. Because the PUC failed to find that the ordinance unreasonably or unduly burdened or restricted the utilities' operations, we grant the city's petition and remand the case to the PUC for further proceedings.

### Facts and Procedural History

On October 23, 1997, the Providence City Council approved an ordinance regulating the excavation and reconstruction of city streets. Providence, R.I., ch.1997–64, No. 629, *An Ordinance in Amendment and in Addition to Chapter 23 of the Code of Ordinances of the City of Providence, as Amended* (ordinance). The ordinance, signed by the mayor, was enacted into law on November 3, 1997.

According to its preamble, the ordinance was enacted to balance the requirements for the "installation and maintenance of utility services and the maintenance of safe and aesthetically pleasing roadways and sidewalks." To that end, the ordinance required that every person who wished to open or excavate a roadway or sidewalk, or lay pipe, wire, line, conduit, or cable on or under any roadway obtain a permit from the city's director of public works (director). In applying for such a permit, applicants were required to post performance bonds, secure liability insurance, and pay two fees: a $40 administration and engineering (A & E) fee, plus an addi-

tional A & E fee of $.25 per square foot for all excavations larger than fifty square feet, and a pavement degradation index fee on all street excavation, with the amount ranging from $.25 to $1 per square foot, to be determined by the age of the street. The director of the city's department of public works (department) was authorized to promulgate rules and regulations to effectuate the purpose of the ordinance.

Accordingly, in December 1997, pursuant to the ordinance, the department promulgated a set of "rules and regulations for street opening." The rules set out with specificity the techniques and materials to be used in excavating and reconstructing streets and sidewalks and required permit applicants to obtain a "Dig Safe" number before applying for the excavation permit. Further, the regulations imposed a moratorium on street excavation from November 15 to April 15 of each year, unless the materials necessary for "hot patch" reconstruction were available during that time. During the moratorium, excavation would be permitted only in the event of an emergency that endangered life or property.

Beginning on October 9, 1997, petitions were filed with the PUC by a number of parties (collectively, the utilities), seeking review of the Providence ordinance and regulations pursuant to G.L.1956 § 39–1–30. Eventually, the PUC consolidated the petitions of Providence Gas Company (Providence Gas), Narragansett Electric Company (Narragansett), Bell Atlantic—Rhode Island (Bell Atlantic), and Brooks Fiber Communications of Rhode Island (Brooks Fiber). The PUC also accepted motions to intervene from Cox Rhode Island Telecom, Inc. (Cox), Valley Gas Company (Valley Gas), and Bristol & Warren

---

1. This lament is not a new one. Over a century ago, this Court considered the town of East Greenwich's liability for an accident caused by an excavation to lay a water pipe. *Seamons v. Fitts,* 21 R.I. 236, 237–38, 42 A. 863, 864 (1899). A major evidentiary issue in that case was expert testimony on "the proper way to fill up excavations in streets to prevent them from becoming soft and miry." *Id.* at 239, 42 A. at 864.

Gas Company (Bristol & Warren Gas).[2] The consolidated petitions were docketed by the PUC as number 2641. Providence Gas earlier had filed a petition challenging a similar ordinance of the City of Cranston (Cranston) that PUC docketed as number 2624. Kent County Water Authority, Narragansett, Valley Gas, and Bristol & Warren Gas intervened in that petition. The PUC held joint hearings on the Providence and Cranston ordinances. In the course of the hearing, Cranston and these latter four petitioners entered into a settlement agreement that was incorporated by stipulation into the decision and order of the PUC. No party has sought review of the settlement agreement or of its inclusion in the decision and order of the PUC, and thus the Cranston agreement is not before us.

The PUC conducted four days of public hearings in July and August 1998, at which ten witnesses testified and forty-six exhibits were received into evidence. On September 7, 1999, the PUC issued a fifty-nine page decision and order that summarized the testimony and evidence presented. In its decision, the PUC asserted its jurisdiction to review the Providence ordinance and the necessity to consider the effect of the ordinance "upon the public health, safety, welfare, comfort, and convenience."

The decision of the PUC contained several findings of fact. In particular, the PUC found that any A & E fee in excess of the $40 minimum and any pavement degradation fee were unreasonable and not sufficiently related to the city's costs. Further, the PUC determined that several aspects of the permit process, as well as the materials and techniques required by

the regulations, interfered with the utilities' ability to install and maintain their equipment. Finally, the PUC held that the winter moratorium on non-emergency street excavations restricted the ability of new utility companies to establish and provide service. Based on these findings of fact, the PUC nullified the ordinance and the regulations, with the exception of the $40 A & E fee.

Providence filed its petition for certiorari on September 9, 1999, and the writ was issued on September 20.[3] Briefs opposing the petition were filed by the PUC, Providence Gas, Narragansett, Cox, and Bell Atlantic. Providence made three arguments in support of its petition. The city alleged, first, that because the ordinance did not attempt to regulate the utilities' core functions of delivering services to customers and because the Legislature had granted Providence authority over its roadways, the PUC lacked jurisdiction to review the ordinance. Second, the city asserted that the PUC improperly applied a "public interest" standard when reviewing the ordinance instead of an "arbitrary and capricious" standard. Third, the city claimed that the PUC incorrectly placed the burden of persuasion on Providence rather than on the utilities when it reviewed the ordinance.

Additional facts will be discussed as required in the legal analysis of the issues raised.

**Standard of Review**

Providence argued that our review of whether the PUC had jurisdiction to review the ordinance should be *de novo*, consistent with our opinion in *City of East Providence v. Public Utilities Commis-*

2. Consolidated Concrete Corporation and PRM Concrete Corporation also intervened for the limited purposes of placing testimony on the record regarding the suitability of particular materials required by the regulations for the reconstruction of an excavation.

3. On September 16, 1999, Providence filed a motion to stay the PUC's decision and order.

On September 20 that motion was denied by the duty justice, and on September 30 the full Court affirmed the denial but ordered that the previous ordinance and regulations, along with the $40 A & E fee sanctioned by the PUC, remain in effect pending the outcome of the present petition.

*sion,* 566 A.2d 1305, 1307 (R.I.1989). The utilities, on the other hand, asserted that the PUC's determination that it had jurisdiction should be viewed as a finding of fact to which this Court should give deference, consistent with *Newport Electric Corp. v. Town of Portsmouth,* 650 A.2d 489, 491–92 (R.I.1994).

It is acknowledged by all parties that § 39–1–30 confers jurisdiction to review an ordinance to the PUC. Section 39–1–30 provides in relevant part:

"Every ordinance enacted, or regulation promulgated by any town or city affecting the mode or manner of operation or the placing or maintenance of the plant and equipment of any company under the supervision of the commission, shall be subject to the right of appeal by any aggrieved party to the commission within ten (10) days from the enactment or promulgation. The commission, after hearing, upon notice to all parties in interest, shall determine the matter giving consideration to its effect upon the public health, safety, welfare, comfort, and convenience."

■ To determine the extent of the PUC's jurisdiction to review municipal ordinances, we must interpret the statute. It is axiomatic that this Court is the final arbiter on questions of statutory construction, *State v. Flores,* 714 A.2d 581, 583 (R.I.1998), and that we undertake a *de novo* review of questions of statutory interpretation. *Levine v. Bess Eaton Donut Flour Co.,* 705 A.2d 980, 982 (R.I.1998). Thus, we first must ascertain the PUC's jurisdiction pursuant to the statute and review the commission's interpretation of its statutory authority.

■ After we have interpreted the statute, the PUC must make factual determinations in accordance with that interpretation. Our role in reviewing factual determinations of the PUC is "to determine whether the commission's findings are lawful and reasonable, fairly and substantially supported by legal evidence,

and sufficiently specific to enable [this court] to ascertain if the evidence upon which the commission based its findings reasonably supports the results." *Newport Electric Corp.,* 650 A.2d at 491 (quoting *Roberts v. New England Telephone & Telegraph Co.,* 487 A.2d 136, 138 (R.I.1985)).

■ If we disagree with the statutory interpretation applied by the commission, as we do in this case, we shall remand the issue to the PUC for factfinding consistent with our construction of the statute, "because the commission, not this [C]ourt, functions as factfinder." *Newport Electric Corp.,* 650 A.2d at 492.

## PUC Jurisdiction

In its report and order, the PUC determined that its jurisdiction was conferred by § 39–1–30 and by *Town of East Greenwich v. O'Neil,* 617 A.2d 104 (R.I.1992). The PUC found that the Providence ordinance and regulations would affect the operations of the petitioning utilities and, on that basis, concluded that the commission had jurisdiction. Section 39–1–30 is not, however, the only statute that must be considered.

■ When this Court construes a statute, our purpose is "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." *Dias v. Cinquegrana,* 727 A.2d 198, 199–200 (R.I.1999) (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)). Although the existence of multiple statutory provisions *in pari materia* complicates our task, our goal remains that of construing the laws "such that they will harmonize with each other and be consistent with their general objective scope." *In re Doe,* 717 A.2d 1129, 1132 (R.I.1998) (quoting *Blanchette v. Stone,* 591 A.2d 785, 786 (R.I.1991)); *see also Matter of Falstaff Brewing Corp. Re: Narragansett Brewery Fire,* 637 A.2d 1047, 1051 (R.I.1994) (when "two apparently inconsistent provisions are

contained in a statute, every effort should be made to construe and apply the provisions as consistent"). In this case, there are several statutory provisions that must be considered with § 39–1–30 in determining the Legislature's intent regarding the PUC's role in regulating street excavations and reconstructions.

We begin with the observation that, at least as early as 1822, towns had both the authority and responsibility to maintain roadways. The Legislature's unambiguous statement in "An act for the Mending of Highways and Bridges" declared that:

> "[A]ll highways, townways, causeways and bridges, lying and being within the bounds of any town, shall be kept in repair and amended from time to time, so that the same may be safe and convenient for travellers with their horses, teams, carts and carriages, at all seasons of the year, at the proper charge and expense of such town, under the care and direction of the surveyor or surveyors of the highways." P.L. 1822, § 1, p. 290 (currently codified as G.L.1956 § 24–5–1).

The statute has remained unchanged in all material aspects, save for the substitution, by 1896, of "the town council of the town" for the surveyors, who had been appointed by the town councils. P.L. 1844, An Act for the Mending of Highways and Bridges, § 1; General Statutes of R.I. 1872, ch. 60, § 1; Public Statutes of R.I. 1882, ch. 65, § 1; G.L. 1896, ch. 72, § 1.

This legislative enactment not only obliges cities and towns to maintain municipal roadways, but it also gives municipalities the authority to regulate the manner in which those roadways are maintained. One hundred and seventy years later, the legislature mandated that "[a]ny person, firm, or corporation *including utilities* and contractors who alter a roadway that is subject to the provisions of this chapter

shall restore that portion of the roadway which was altered to the same or better condition that existed prior to alteration." Section 24–5–1.1. (Emphasis added.) This provision places a direct obligation on utilities to repair and restore street excavations. Because § 24–5–1.1 provides no standards for that repair or restoration, it is clear that the Legislature intended that the obligatory restoration by private excavators be regulated "under the care and direction of the town council" through ordinances and rules that municipalities were authorized to promulgate by § 24–5–1.

In addition to the duty of municipalities to maintain roadways, by 1844 a concomitant liability was imposed on cities and towns for any damages resulting from improper maintenance of municipal roadways.[4] P.L. 1844, An Act for the Mending of Highways and Bridges, § 13. This provision has also remained virtually unchanged to the present day. Section 24–5–13; G.L.1956 § 45–15–8. Consequently, if a utility or other private excavator fails to properly restore a roadway, and a driver or pedestrian suffers subsequent damage, the municipality may be held statutorily liable for damages. *See Seamons v. Fitts,* 20 R.I. 443, 444–45, 40 A. 3, 3–4 (1898) (holding that a town was liable for negligent road reconstruction by a private water company). In our opinion, the Legislature would not have imposed this liability on municipalities if it had not intended that communities be given sufficient authority to regulate the manner in which streets are repaired and reconstructed and thereby take steps to prevent and reduce injuries for which cities and towns could be held liable.

■ Section 39–1–30 confers upon the PUC the power to review ordinances or regulations promulgated by any town or city "affecting the mode or manner of operation or the placing or maintenance of

---

4. Before 1844, although there was no statutory provision for a private cause of action, a town that failed to maintain its roadways was subject to criminal indictment by the attorney general and to a fine upon conviction. P.L. 1822, An act for the Mending of Highways and Bridges, § 10.

the plant and equipment of any company under the supervision of the commission." A facial examination of this statute clearly grants jurisdiction to the PUC to review the ordinance in question, inasmuch as the ordinance does affect the placing and maintenance of equipment of utility companies and the ability of the utilities to connect their services by lines, pipes, wires, or other implements to buildings occupied by utility customers.

■ This grant of jurisdiction to review, however, does not authorize or empower the PUC to nullify or substantially modify a municipal ordinance that regulates the maintenance and repair of city streets and highways unless such ordinance or regulation is unduly burdensome and adversely affects the ability of the utility company to service its customers. In short, the jurisdiction to review does not confer untrammeled power upon the PUC to nullify or modify a city or town ordinance relating to the municipality's streets and highways without careful fact-finding that balances the need of the municipality to control the maintenance of its highways with the need of the utility company to provide service to its customers.

This Court, in interpreting the statute that imposes upon municipalities the authority and obligation to maintain highways and bridges within its boundaries in harmony with the statute that accords to the PUC the right to review municipal ordinances that affect public utilities, is constrained to recognize the delicate balance which results from conflicting legitimate interests. The PUC must by its factfinding also recognize these conflicting interests and seek to harmonize the need of the municipality to maintain its highways with the need of the utility companies to provide services. The obligation of a municipality to maintain and regulate its highways is of equal concern with that of the public utility to provide service to customers. These dual obligations must coexist and be accorded as effective a balance

as is practicable in a given set of circumstances.

■ Consequently, the jurisdiction to review does not permit the PUC arbitrarily to discount the compelling interest of the municipality in favor of the utility company. The PUC must accord due deference to the authority of the municipality to regulate the maintenance of its highways when it evaluates the effect of an ordinance upon a public utility. In order to nullify an ordinance, the PUC must find facts that are competent to establish that the ordinance is unduly and unnecessarily burdensome in its impact upon the business and services of the utility companies. A mere incidental burden whether financial or otherwise is not enough to support the nullification of an ordinance. The burden must have a substantial adverse impact upon the business of the utility in order for the PUC to exercise its power to overrule or modify substantially the considered judgment of the legislative authority of the municipality. We review any findings of the PUC " 'to ascertain if the evidence upon which the commission based its findings reasonably supports the results.' " *Newport Electric Corp.*, 650 A.2d at 491.

The PUC cited as precedent for this case our holding in *Town of East Greenwich v. O'Neil*, 617 A.2d 104 (R.I.1992). The facts in *O'Neil*, however, are clearly distinguishable from those of the case at bar. In *O'Neil*, East Greenwich had enacted an ordinance that prohibited for three years the construction of high voltage electric transmission lines greater than sixty kilowatts. *Id.* at 106. The PUC has been granted " 'exclusive power and authority to supervise, regulate, and make orders governing the conduct' " *id.* at 110, of utility companies by § 39–1–1, and thus the town clearly "invaded a field that the state has intentionally occupied." *O'Neil*, 617 A.2d at 110. In our view, a municipality's regulating the excavation and refilling of roadways—for which activity towns have long been held responsible

and liable in the event of damages—does not clearly invade a field that the state has intentionally occupied, to the exclusion of cities and towns. Finally, one respondent acknowledged at oral argument that the PUC does not have special authority to regulate roadways, and another agreed that the state has not completely preempted the field of roadway excavation, additionally distinguishing this case from *O'Neil.*

### PUC's Standard of Review

 Having considered the PUC's jurisdiction to review the Providence ordinance, we now turn to the outcome of that review as embodied in the PUC's order and decision. The city argued that even if the PUC had jurisdiction to review the ordinance, the commission should have applied an "arbitrary and capricious" standard in conducting that review. The utilities countered that the PUC's standard of review was determined by § 39–1–30 and that the commission properly applied the "public interest" standard called for by the statute.

 The statute directs that when the PUC reviews a municipal ordinance, the commission "shall determine the matter giving consideration to its effect upon the public health, safety, welfare, comfort, and convenience." It is clear and unambiguous that the Legislature intended that the PUC use a "public interest" standard in reviewing municipal ordinances and regulations. It is also clear that here the PUC misconstrued its obligations under that statutory standard.

At the close of its decision, the PUC nullified every part of the Providence ordinance and regulations, with the exception of the $40 A & E fee. As a result, the city was left with no enforceable standard to govern the excavation or reconstruction of its streets. In fact, even the provisions of the ordinance requiring excavators to receive a permit were nullified. To exercise some control over street excavation, Providence was forced to petition this Court for

an order allowing the city to enforce the previous ordinance and regulations that had governed street excavation. It is apparent that the "public health, safety, welfare, comfort, and convenience" were not advanced by the PUC's nearly absolute nullification of the ordinance. It is our opinion that the city requires more freedom to control the issuance of excavation permits than was afforded by the nullification of its ordinance.

We are not convinced that a compromise settlement between the city and the utilities cannot be achieved, as has occurred with Cranston. If such a reconciliation proves impossible upon remand, rather than completely nullifying the ordinance and regulations, the commission after fact-finding should set aside only those provisions of the ordinance and regulations that unduly or unreasonably burden or restrict the ability of the utilities to perform necessary tasks. In its decision, the PUC apparently gave little or no weight to the legitimate interests and statutory responsibilities of the city in properly maintaining its roadways. In addressing this matter on remand, the commission must act not only to protect the utilities and their rate payers but also must preserve the city's statutorily mandated interest in regulating street excavation.

The fact that the commission nullified virtually every provision of the Providence ordinance is puzzling, given its approval of the utilities' settlement following their challenge to Cranston's similar ordinance and regulations. Many of the provisions of the Providence ordinance that the commission found to be damaging to the public interest were included in the Cranston settlement. For example, the settlement with Cranston provided that under some circumstances the city could require utilities to use flowable fill and infra-red repairs, and the settlement contemplated the imposition of a moratorium on excavation, all hotly contested elements of the Providence ordinance and regulations. Further, the settlement permitted a $75 per-

mit fee, almost twice the $40 A & E fee that the commission allowed Providence to impose. Although the settlement did not impose a degradation index fee, it did require the utilities to guarantee all road reconstruction for a five-year period. If these provisions of the Cranston settlement were in the interest of the public, then surely some similar provisions of the Providence ordinance and regulations would have served the public interest.

### Burden of Persuasion

Providence's final argument was that the PUC decision improperly placed the burden of persuasion upon the city, given that in a number of instances the commission made a finding that the city had failed to substantiate or prove the need for certain provisions of the ordinance and regulations. The city contended that the burden of proof should have been placed on the utilities as petitioners seeking to have the ordinance nullified.

 As we stated *ante*, the Legislature has delegated to the PUC the task of determining whether a municipal ordinance unreasonably affects "the public health, safety, welfare, comfort, and convenience." Section 39–1–30. The PUC's task, then, is to determine whether the ordinance unduly or unreasonably burdens or restricts the operation of utilities.

A municipal ordinance is presumed to be valid. In this case, the aggrieved parties—here the utilities—have the burden to prove by a fair preponderance of the evidence that the Providence ordinance is an unreasonable or undue burden. If the utilities succeed in doing so, then the burden shifts to the city to show that the ordinance is not unreasonable or burdensome. Such a showing by the city would, for example, require evidence of the costs incurred by the city as a result of the utilities' excavating and faulty restorations. The PUC's determination of this issue is afforded the same weight that is owed to the commission's other factual determinations.

### Conclusion

In summary, the petition for certiorari is granted, and the decision and order of the PUC is hereby quashed. We remand this case to the commission for further proceedings consistent with this opinion, with our encouragement that the parties engage in fruitful settlement negotiations. During these deliberations, the city must produce evidence of its costs incurred following delayed or faulty pavement and highway restorations. In the meantime, the city's previous ordinance and regulations and the $40 A & E fee remain in effect, pursuant to our order of September 30, 1999.