Donna DELSANTO, Administratrix
of the Estate of Geraldine
DelSanto et al.

v.

HYUNDAI MOTOR FINANCE
CO., et al.

No. 2003–227–APPEAL.

Supreme Court of Rhode Island.

Aug. 12, 2005.

Gerrick Van Deusen, Providence, for
Plaintiff.

Robert J. Quigley, Jr., Providence, for
Defendant.

Before: WILLIAMS, C.J.,
GOLDBERG, FLAHERTY, SUTTELL,
and ROBINSON, JJ.

## OPINION

### Introduction

ROBINSON, Justice.

In this negligence action, the plaintiff, Donna DelSanto, acting in her capacity as the Administratrix of the Estate of Geraldine DelSanto (DelSanto), appeals from the Superior Court's grant of summary judgment in favor of the defendant, Hyundai Motor Finance Company (Hyundai), with respect to her wrongful death claim against that entity.[1]

The factual background of this case, although tragic, is quite simple. (Indeed the parties are in agreement as to the facts that are pertinent to this appeal.) By contrast, the legal terrain that lies before us is more complex: there are several different statutes that are at least potentially implicated by this case, and harmonizing those statutes is a challenging task. We are nevertheless convinced that the statutory provisions relied upon by the parties can, in the end, be harmonized in a logical and intellectually honest manner.[2] For the reasons set forth below, we affirm the judgment of the Superior Court.

### Facts and Travel

This case arises out of a motor vehicle accident that occurred in Cranston on July 26, 1999. At the time of the accident, the decedent, Geraldine DelSanto, was a passenger in a vehicle being operated by her daughter, Patricia DelSanto. The decedent was killed when the vehicle in which she was riding was struck from behind by a vehicle owned by Hyundai, leased to one Doris White, and operated by one Joseph Gould.

Not long after the accident, on October 28, 1999, the plaintiff, Donna DelSanto, acting in her capacity as Administratrix of the Estate of Geraldine DelSanto, executed a settlement agreement entitled: "Joint Prorata Tort–Feasor Release." By its terms, the agreement released Joseph Gould, Doris White, and White's insurer, Progressive Northern Insurance Company, from "any and all claims, actions, and causes of action * * * arising out of an accident that occurred at or near Elmwood Avenue, Cranston, RI on or about the 26th day of July, 1999." (Emphasis omitted.)

Approximately two years later, on October 16, 2001, plaintiffs commenced the instant action in the Superior Court.

Count 1 of the complaint asserted that the lessor, Hyundai, was vicariously liable for the wrongful death of Geraldine DelSanto because, when the accident occurred, Gould was negligently driving the leased vehicle with the lessee's permission.[3] The basic premise of DelSanto's

---

1. In addition to Donna DelSanto, the complaint named Patricia DelSanto, P.P.A., and Bryana DelSanto (Patricia's minor daughter) as party plaintiffs; and, in addition to Hyundai Motor Finance Company, it named Progressive Northern Insurance Company and Joseph Gould as party defendants. It appears that, by the time of the hearing on the summary judgment motion, all of the claims involving those other defendants had been settled. Accordingly, the only issue that still remained in the case was the wrongful death action brought by plaintiff Donna DelSanto, acting in her capacity as the Administratrix of the Estate of Geraldine DelSanto, against defendant Hyundai Motor Finance Company.

2. It is a fundamental principle of statutory interpretation that every effort is to be made to harmonize statutes. *State v. Ahmadjian*, 438 A.2d 1070, 1081 (R.I.1981); *see also In re Petition for Review Pursuant to § 39–1–30 of Ordinance Adopted by the City of Providence*, 745 A.2d 769, 773 (R.I.2000); *Rhode Island State Police Lodge No. 25 v. State*, 485 A.2d 1245, 1247 (R.I.1984).

3. In response to plaintiffs' request for admissions, Hyundai acknowledged that Joseph Gould (the driver) was operating its vehicle with permission at the time of the accident and that such operation did not violate the terms of the lease. In view of these circum-

position was that, as the owner of the motor vehicle, Hyundai was jointly and severally liable for Gould's actions.[4]

Thereafter, Hyundai filed a motion for summary judgment, asserting that Donna DelSanto's execution of the October 28, 1999 release barred the wrongful death claim against Hyundai as a matter of law pursuant to G.L.1956 chapter 6 of title 10 (the "Uniform Contribution Among Tortfeasors Act").[5]

The motion justice granted Hyundai's motion for summary judgment. She held that, pursuant to the provisions of G.L. 1956 (1994 Reenactment) § 31–33–6,[6] Gould (who was driving the leased vehicle with permission) was an agent of the lessor, Hyundai, and that, as a matter of law, they constituted a single tortfeasor for purposes of the Uniform Contribution Among Tortfeasors Act. Continuing with her analysis, the motion justice concluded that, even though G.L.1956 § 31–34–4[7] does not contain the same explicit agency language as § 31–33–6, these statutes must be read in conjunction with each other. She then proceeded to hold that, in view of her understanding of our reasoning in *DiQuinzio v. Panciera Lease Co.*, 612 A.2d 40 (R.I.1992), "there is no direct liability for Hyundai, rather it is based on [Gould's] liability." The motion justice held that DelSanto's claim must fail, because the release which she signed on October 28, 1999, specifically released Gould and thereby, as a matter of law, released Hyundai. This appeal followed.[8]

stances, Gould was deemed, pursuant to G.L. 1956 (1994 Reenactment) § 31–33–6, to be the agent of the lessor.

4. The complaint specifically alleged that Hyundai was "vicariously liable to [DelSanto], pursuant to R.I.G.L. Sec. 31–33–6 and 31–34–4 and other controlling law."

5. General Laws 1956 § 10–6–2 reads as follows:

"For the purposes of this chapter, the term 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor."

6. Section 31–33–6 makes provisions for an owner's liability for the acts of others. Although it has since been amended, the statute that was in effect at the time of the accident at issue in this case (G.L.1956 (1994 Reenactment) § 31–33–6) was worded as follows:

"Whenever any motor vehicle shall be used, operated, or caused to be operated upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than the owner, or lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, lessee, or bailee, of the motor vehicle * * *; and for the purposes of this section the term 'owner' shall include any person * * * having the lawful possession or control of a motor vehicle under a written sale agreement."

7. General Laws 1956 § 31–34–4 imposes joint and several liability on the owner of rental vehicles for any damages caused by a person negligently operating a rental vehicle with permission. Although this statute has also been amended since the time of the accident at issue in this case, the most pertinent language in that statute read as follows at that time:

"Any owner of a for hire motor vehicle or truck * * * shall be jointly and severally liable with any person operating the vehicle for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner." Section 31–34–4 as amended by P.L.1997, ch. 353, § 1.

8. It should be noted that DelSanto filed her Notice of Appeal on February 26, 2003, even though final judgment was not entered until February 28, 2003. DelSanto's appeal, therefore, technically was premature under Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure. We have held in the

This matter first came before this Court in March, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised should not be summarily decided. At that time the Court concluded that cause had been shown, and therefore the matter was placed on the regular calendar for full briefing and oral argument.

In an order that we issued on March 19, 2004, in which we indicated our desire for full briefing, we specifically requested that, among other issues, the parties brief the following question:

"whether the language of G.L.1956 § 31–34–4, providing that the owner and operator of 'a for hire motor vehicle * * * shall be jointly and severally liable' for damages caused by the negligence of 'any person operating the vehicle by or with the permission of the owner' is inconsistent with the language of G.L.1956 § 31–33–6 (providing that the driver of a vehicle who causes it to be operated upon any public highway 'with the consent of the owner, or lessee, or bailee, thereof, expressed or implied * * * shall in the case of an accident be deemed to be the agent of the owner, or lessee, or bailee, of the motor vehicle') and with the language of G.L.1956 § 10–6–2 (providing that a principal and agent are to be considered a single tortfeasor for purposes of the Uniform Contribution Among Tortfeasors Act)."

Thereafter, oral argument took place on December 9, 2004, and we now address the important statutory interpretation issues that this case implicates.

## Standard of Review

This Court reviews a motion justice's decision to grant a summary judgment motion on a *de novo* basis. *Martellini v. Little Angels Day Care, Inc.,* 847 A.2d 838, 842 (R.I.2004); *Pontbriand v. Sundlun,* 699 A.2d 856, 859 (R.I.1997). In carrying out that *de novo* review, this Court utilizes the same standards and criteria as were employed by the motion justice; and we review the evidence in the light most favorable to the nonmoving party. *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1225 (R.I. 1996); *O'Hara v. John Hancock Mutual Life Insurance Co.,* 574 A.2d 135, 136 (R.I. 1990). We will affirm a summary judgment if we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Alves v. Hometown Newspapers, Inc.,* 857 A.2d 743, 750 (R.I.2004).[9]

## Analysis

For plaintiff's claim against Hyundai to remain viable after the execution of the release document that included Gould among the releasees, plaintiff must establish that Hyundai was a joint tortfeasor. The plain fact is that Hyundai is not (and never was with respect to this case) a tortfeasor or a joint tortfeasor in either the usual sense or the legal sense of those expressions.[10] Hyundai's liability, if any, would have come about because of a legal

---

past, however, that an appeal filed after an oral decision but before entry of a final judgment may be treated as timely in the interests of justice and to avoid undue hardship. *See, e.g., Russell v. Kalian,* 414 A.2d 462, 464 (R.I.1980); *see also United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 n. 9 (R.I.2003). We do so here.

**9.** Even if we were not reviewing the grant of a summary judgment, we would nonetheless be

applying the *de novo* standard of review in this case, because we are faced with a pure question of law and statutory interpretation, in which *de novo* review is the norm. *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001).

**10.** The plaintiff's contention that Hyundai was a joint tortfeasor flies in the face of the accepted meaning of the term. For example,

fiction imposed by statute pursuant to the concept of vicarious liability. *See DiQuinzio,* 612 A.2d at 43 ("The owner-lessor is not \* \* \* itself a tortfeasor except by way of the legal fiction of vicarious liability.").

Yet, while Hyundai clearly was exposed (before the execution of the settlement agreement) to the possibility that it might have to pay damages, that exposure was due to the law's imposition of *vicarious liability*[11] on certain entities and persons. *See* §§ 31–33–6 and 31–34–4. It is important to bear in mind that there is no allegation in this case that Hyundai was in any way a direct tortfeasor; no negligence or other actionable conduct by Hyundai is alleged. Whatever liability Hyundai might have been exposed to as a result of the traffic accident would have been entirely *vicarious* in nature. *See Oliveira v. Lombardi,* 794 A.2d 453, 465 (R.I.2002) (describing § 31–33–6 and § 31–34–4 as "vicarious-liability statutes"); *see also Pridemore v. Napolitano,* 689 A.2d 1053, 1056 (R.I.1997) ("[A] release of the servant or agent from liability for tortious conduct would serve to release the master or principal whose liability was only derivative \* \* \*.").

■ It must be emphasized that the legal construct of vicarious liability does not transmogrify a non-tortfeasor into a tortfeasor. *See Kinetics, Inc. v. El Paso Products Co.,* 99 N.M. 22, 653 P.2d 522, 528 (N.M.Ct.App.1982) ("Because the respondeat superior form of vicarious liability is imposed upon one party through a legal fiction, the parties are not joint tortfeasors. \* \* \* [I]t is elementary that the Uniform Contribution Among Tortfeasors Act does not apply."); *see also Theophelis v. Lansing General Hospital,* 430 Mich. 473, 424 N.W.2d 478, 483 (1988) (plurality opinion) ("The principal, having committed no tortious act, is not a 'tortfeasor' as that term is commonly defined."); *see generally Jacobson v. Parrill,* 186 Kan. 467, 351 P.2d 194 (1960); *Anne Arundel Medical Center, Inc. v. Condon,* 102 Md.App. 408, 649 A.2d 1189 (1994); *Estate of Williams v. Vandeberg,* 620 N.W.2d 187 (S.D.2000).

■ It is true that § 31–34–4 declares that the owner of a for-hire vehicle shall be "jointly and severally liable" with a person operating with permission. It must be emphasized, however, that that statutorily created potential liability is vicarious in nature; the statute does *not* provide that the owner of a for-hire vehicle becomes a joint tortfeasor by operation of law. As we held in *DiQuinzio,* the provisions of § 31–34–4 "neither create nor reflect a distinct duty of care on the part of the owner-lessor. \* \* \* The owner-lessor is not \* \* \* itself a tortfeasor except by way of the legal fiction of vicarious liability." *DiQuinzio,* 612 A.2d at 43.

one leading legal dictionary defines the term "joint tortfeasors" as follows: "Two or more *tortfeasors* who contributed to the claimant's injury and who may be joined as defendants in the same lawsuit." Black's Law Dictionary 1527 (8th ed.2004) (emphasis added). *See also DiQuinzio v. Panciera Lease Co.,* 612 A.2d 40, 43 (R.I.1992) ("It is evident that the substantive basis of an owner-lessor's liability under § 31–34–4 for the *negligent operation* of its for-hire motor vehicle is the wrongful conduct of the operator.").

11. In a decision rendered many years ago in the case of *Nadeau v. Melin,* 260 Minn. 369, 110 N.W.2d 29 (1961), the Supreme Court of Minnesota succinctly and accurately defined the concept of vicarious liability in tort law as follows:

"Vicarious liability is based on a relationship between the parties, irrespective of participation, either by act or omission, of the one vicariously liable, under which it has been determined as a matter of policy that one person should be liable for the act of the other. Its true basis is largely one of public or social policy under which it has been determined that, irrespective of fault, a party should be held to respond for the acts of another." *Id.* at 34.

In *Elias v. Unisys Corp.*, 410 Mass. 479, 573 N.E.2d 946, 947–48 (1991) the Supreme Judicial Court of Massachusetts succinctly summarized these concepts as follows:

> "Underlying the concept of joint liability is the principle that all joint (or concurrent) tortfeasors are independently *at fault* for their wrongful acts. For this reason § 4 of G.L. c. 231B permits a plaintiff to bring an action against one joint tortfeasor after having released another joint tortfeasor from liability. By contrast, the principles of vicarious liability apply where only the agent has committed a wrongful act. The principal is *without fault*. The liability of the principal arises simply by the operation of law and is only derivative of the wrongful act of the agent. \* \* \* Because of this, established case law holds that a general release given to an agent will preclude a subsequent action against his principal."

The plaintiff *could have* opted to pursue a direct action against Hyundai at any point prior to the execution of the settlement agreement.[12] Section 31–34–4 makes that possible. Once having agreed to settle with the driver, however, that statutory option was no longer available to plaintiff.

The language of § 10–6–2 is clear and unequivocal: "a master and servant or principal and agent shall be considered a single tortfeasor."[13] We believe that this language constitutes an insuperable hurdle for the plaintiff in this case.[14]

## Conclusion

Once Donna DelSanto, acting in her capacity as Administratrix, signed the document that released Joseph Gould, Hyundai, as lessor of the vehicle that Gould was driving, ceased to be exposed to liability. Prior to the execution of that release, Hyundai was exposed to potential vicarious liability through the workings of the cited statutes. But vicarious liability does not convert a non-tortfeasor into a tortfeasor, and exposure to liability ceases once there has been a resolution of the controversy involving the person or entity that triggered the possibility of vicarious liability. In plain English, once Gould was released, Hyundai was no longer exposed to liability.

For these reasons, the judgment is affirmed, and the papers may be returned to the Superior Court.

**12.** That would have been another "avenue of recovery" for plaintiff. *See Dias v. Cinquegrana*, 727 A.2d 198, 199 (R.I.1999) ("[T]he manifest purpose of § 31–33–6 is to ensure that a victim of a car injury has an avenue of recovery.").

**13.** It is interesting to note that the quoted language was added to the statute by the General Assembly in 1970 apparently as a reaction to this Court's decision in the case of *Smith v. Raparot*, 101 R.I. 565, 568, 225 A.2d 666, 667 (1967) (holding that the release of a servant did not release the master from liability under the Uniform Contribution Among Tortfeasors Act). *See Pridemore v. Napolitano*, 689 A.2d 1053, 1056 (R.I.1997).

**14.** The principles enunciated in our decision in *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 456 (R.I.1996) are not at all inconsistent with our holding in this case today. The party whom we held not to have been released in *Marr Scaffolding* was an alleged *actual tortfeasor*—not an entity (like Hyundai in this case) that, solely by operation of law, is exposed to the imposition of damages by virtue of a preexisting legal relationship (e.g., the principal/agent relationship; the master/servant relationship) and not by virtue of any tortious act actually committed by it. *See id.* at 456.