Barbara J. DAVIS et al.

v.

**FORD MOTOR CREDIT CO., et al.**

**No. 2004–221–Appeal.**

Supreme Court of Rhode Island.

Aug. 12, 2005.

Ronald J. Resmini, Providence, for Plaintiff.

Kevin C. Cain, Boston, MA, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

PER CURIAM.

This case came before the Court on May 16, 2005, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Therefore, we proceed to decide this appeal at this time.

### Facts and Travel

The facts that are pertinent to this appeal are undisputed. On October 2, 2000, Barbara J. Davis was injured when the vehicle she was driving was struck by a vehicle driven by Ronald Lizotte (Lizotte). The Lizotte vehicle was owned by defendant Ford Motor Credit Company (Ford Credit), which had leased it to him. At the time of the accident, Lizotte was covered by a personal automobile liability insurance policy that had been issued to him by AIG Claim Service, Inc. (AIG).

On June 21, 2002, and July 15, 2002, respectively, Barbara Davis and Clarence Davis (her husband) executed general releases (the releases) in favor of Lizotte and AIG in exchange for the sum of $100,000.[1] Subsequently, on November 22, 2002, Barbara and Clarence Davis (plaintiffs) commenced an action against Ford Credit in the Superior Court for Providence County. The gravamen of plaintiffs' lawsuit was that, as the owner of the motor vehicle, Ford Credit was jointly and severally liable for Lizotte's allegedly negligent conduct.[2]

Ford Credit filed a motion for summary judgment on November 28, 2003, asserting that plaintiffs' execution of the releases barred their claim against Ford Credit as a matter of law pursuant to G.L.1956 § 31–33–6,[3] G.L.1956

---

1. Barbara and Clarence Davis signed the releases, and they subsequently received a check for $100,000 from AIG. Before that check was cashed, however, plaintiffs' attorney contacted Ford Credit requesting permission to accept the $100,000 settlement. Having received no response from Ford Credit, plaintiffs' attorney returned the check to AIG.

2. Count I of the complaint specifically alleged that "as a direct and proximate cause of the motor vehicle owned by Defendant being operated in a negligent manner Plaintiff [Barbara Davis] was caused to suffer severe personal injuries, incurred pain and suffering, incurred medical, hospital and doctor expenses and was further caused the loss of wages and/or earning capacity all to her damage." Count II alleged that Ford Credit's negligence (which we understand to mean imputed negligence) caused Clarence Davis to incur loss of consortium and mental pain and suffering.

3. General Laws 1956 § 31–33–6 makes provisions for an owner's liability for the acts of others. Although it has since been amended, the statute that was in effect at the time of the accident at issue in this case was worded as follows:

   "Whenever any motor vehicle shall be used, operated, or caused to be operated

§ 31–34–4,[4] and G.L.1956 § 10–6–2 (the "Uniform Contribution Among Tortfeasors Act").[5] In response, plaintiffs argued that the releases only specified Lizotte and AIG as releasees and did not include Ford Credit. The plaintiffs further argued that, even if the releases were to be read as running to Ford Credit, they would be unenforceable contracts because: (1) "no valid consideration was accepted in return for the releases"[6] and (2) a mutual mistake of fact existed at the time the releases were executed.[7] The motion justice granted Ford Credit's summary judgment motion, and plaintiffs have now appealed to this Court.

## Analysis

### I

### Standard of Review

This Court reviews a motion justice's decision to grant a summary judgment motion on a *de novo* basis. *Martellini v. Little Angels Day Care, Inc.*, 847 A.2d 838, 842 (R.I.2004); *Pontbriand v. Sundlun*, 699 A.2d 856, 859 (R.I.1997). In carrying

out that *de novo* review, this Court utilizes the same standards and criteria as were employed by the motion justice; and we review the evidence in the light most favorable to the nonmoving party. *Accent Store Design, Inc. v. Marathon House, Inc.*, 674 A.2d 1223, 1225 (R.I.1996); *O'Hara v. John Hancock Mutual Life Insurance Co.*, 574 A.2d 135, 136 (R.I.1990). We will affirm a summary judgment "if we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 750 (R.I.2004).

### II

### The Release Documents Constituted a Valid and Enforceable Contract

■ We agree with the motion justice that the releases constituted a valid and enforceable bilateral contract between the plaintiffs on the one hand and Lizotte and

---

upon any public highway of this state with the consent of the owner, or lessee, or bailee, thereof, expressed or implied, the driver thereof, if other than the owner, or lessee, or bailee, shall in the case of an accident be deemed to be the agent of the owner, or lessee, or bailee, of the motor vehicle * * *; and for the purposes of this section the term 'owner' shall include any person * * * having the lawful possession or control of a motor vehicle under a written sale agreement." G.L.1956 (1994 Reenactment) § 31–33–6.

4. General Laws 1956 § 31–34–4 imposes joint and several liability on the owner of rental vehicles when there is proof of damages caused by a person operating a rental vehicle with permission. Although this statute has also been amended since the time of the accident at issue in this case, the most pertinent language in that statute read as follows at that time:

"Any owner of a for hire motor vehicle or truck * * * shall be jointly and severally liable with any person operating the vehicle

for any damages caused by the negligence of any person operating the vehicle by or with the permission of the owner." Section 31–34–4, as amended by P.L.1997, ch. 353, § 1.

5. General Laws 1956 § 10–6–2 reads as follows:

"For the purposes of this chapter, the term 'joint tortfeasors' means two (2) or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them; provided, however, that a master and servant or principal and agent shall be considered a single tortfeasor."

6. The source of the quoted phrase is the plaintiffs' "motion in objection to Ford Motor Credit Company's motion for summary judgment" that was filed with the Superior Court.

7. At oral argument in this Court, plaintiffs waived their mutual mistake argument.

AIG on the other.[8] As the motion justice aptly noted, our opinion in *Filippi v. Filippi*, 818 A.2d 608, 624 (R.I.2003), reiterated one of the basic principles of contract law—namely, that "a bilateral contract requires mutuality of obligation, which is achieved when both parties are bound legally by the making of reciprocal promises." We also noted in that opinion that "[m]utuality of obligation fulfills the consideration requirement of contracts." *Id.*

We further agree with the following statement by the motion justice:

> "[T]he mere fact that there was no cashing of the check doesn't, in the Court's mind, affect the enforceability of that contract, because what was bargained for was a release in exchange for a payment. The release was signed and executed, and the payment was made."

Therefore, the fact that plaintiffs subsequently sought to return the $100,000 payment that had been delivered to them is irrelevant as a matter of contract law. It is absolutely clear that a valid and enforceable contract was formed at the time the parties to the releases exchanged the promises described above.

### III

### Ford Credit and Lizotte are not Joint Tortfeasors

■ This Court has today issued its decision in the case of *DelSanto v. Hyundai Motor Finance Co.*, 882 A.2d 561 (R.I. 2005), in which we have held that, where a lessee negligently drives a motor vehicle, the owner of the motor vehicle may be exposed to potential liability pursuant to §§ 31–33–6 and 31–34–4, but that exposure to potential liability arises *solely* pursuant to the law's imposition of *vicarious liability*.[9] The lessee and the owner do *not* become joint tortfeasors by the operation of those statutes, and they are not to be considered as such for the purposes of § 10–6–2.[10]

Like the plaintiff in *DelSanto,* the plaintiffs in this case *could have* opted to institute a direct action against Ford Credit at any point prior to the execution of the releases pursuant to G.L.1956 §§ 31–33–6 and 31–34–4; but, once having executed a settlement agreement with Lizotte, that statutory option was no longer available to the plaintiffs. From the moment Lizotte was released, Ford Credit was no longer exposed to liability. *See generally DelSanto,* 882 A.2d at 566.

### Conclusion

For these reasons, the judgment is affirmed, and the papers may be returned to the Superior Court.

---

**8.** The release signed by Barbara Davis provides in pertinent part that "in consideration of the sum of ONE HUNDRED THOUSAND ($100,000.00) DOLLARS to be paid by Ronald Lizotte, and AIG Claim Service * * * [she does] hereby remise, release, and forever quitclaim unto said Ronald Lizotte, and AIG Claim Service * * * all claims derived from the accident of October 2, 2000 * * *." Clarence Davis signed a similarly worded release.

**9.** This statement applies only to alleged negligence that occurred prior to the effective date (July 7, 2003) of the amendments to §§ 31–33–6 and 31–34–4.

**10.** The reader of the present opinion is advised to read *DelSanto v. Hyundai Motor Finance Co.*, 882 A.2d 561 (R.I.2005) in its entirety for a fuller explanation of our thinking in this regard.