The **TOWN OF EAST GREENWICH** et al.

v.

**James E. O'NEIL** et al.

**No. 91–477–A.**

Supreme Court of Rhode Island.

Dec. 4, 1992.

Amato DeLuca, and Michael Schwartz, Mandell, DeLuca & Schwartz, and Elizabeth Noonan, Adler, Pollock & Sheehan, Providence, for petitioner.

Adrienne Southgate (PUC), Julio Mazzoli, Asst. Atty. Gen., Peter LaCouture, Andrew Prescott, Tillinghast, Collins & Graham, and Ronald Gerwatowski, Narragansett Elec. Co., Providence, for respondent.

## OPINION

FAY, Chief Justice.

This case comes before this court on appeal by both the plaintiffs and the defendants from a Superior Court judgment. The trial justice granted the plaintiffs partial relief and enjoined the State of Rhode Island Public Utilities Commission (PUC or the commission) from conducting certain proceedings but ruled in favor of the defendants regarding the constitutionality of an ordinance. For the reasons stated herein, we affirm in part and reverse in part the trial justice's decision.

The plaintiffs are the town of East Greenwich (the town) and the president and the members of the East Greenwich Town Council, individually and in their capacity as town council members, and Morris Roth (the town council). The defendants are the Attorney General for the State of Rhode Island (the Attorney General), in his official capacity, the PUC, the members of the PUC, individually and in their capacity as members of the commission, and the Narragansett Electric Company (Narragansett Electric). The principal defendant, Narragansett Electric, is a public utility that provides electrical power to most of the state.

Narragansett Electric proposed to construct 345–kilovolt (kV) and 115–kV high-voltage transmission lines along existing rights of way in East Greenwich. The 115–kV transmission line would run from Warwick to North Kingstown. The 345–kV line would span forty-four miles, from Burrillville to Warwick, 3.3 miles of which would run through the town.

The citizens of East Greenwich expressed concern about the possible harmful effects of electromagnetic fields that emanate from power lines. On October 9, 1990, the town adopted Ordinance No. 553 (the ordinance) which created a moratorium period of three years on the construction of electric transmission lines exceeding sixty kilovolts.[1] Narragansett Electric is thus prohibited from constructing its planned high-voltage transmission lines through the town of East Greenwich.

On October 17, 1990, Narragansett Electric filed a petition with the PUC for review of the town's ordinance pursuant to G.L. 1956 (1990 Reenactment) § 39–1–30, docket No. 194. Section 39–1–30 requires an appeal to the PUC from issues affecting electric utility companies. *City of East Provi-*

---

**1.** Ordinance No. 553 of the East Greenwich Code of Ordinances is known as the High Voltage Line Moratorium Act. It provides in pertinent part:

"The construction of high voltage lines greater than 60 kV cumulative, are hereby prohibited for a period of three (3) years commencing upon enactment of this ordinance to allow ongoing research projects and studies, includ-

ing those undertaken by the Federal Government, other states, academic institutions and the electric utility industry, to establish whether exposure to electromagnetic fields caused by electrical utility generating and transmission facilities present a risk to the health, safety, and welfare of the citizens of the Town of East Greenwich." Section 16–3.

*dence v. Public Utilities Commission,* 566 A.2d 1305, 1306 (R.I.1989). Hearings on the petition before the PUC were scheduled for February 1991 but were deferred pending the outcome of this matter.

The town commenced this action in Superior Court, seeking a declaration that § 39-1-30 violated the United States and Rhode Island Constitutions. Considering the questions presented, the trial justice permitted the Attorney General to intervene. Narragansett Electric filed a counterclaim challenging the legality of the ordinance on the grounds that because the PUC has exclusive jurisdiction to regulate public utilities, the ordinance constituted an impermissible attempt by the town to regulate Narragansett Electric. The town filed a motion to dismiss Narragansett Electric's counterclaim, contending it was barred by the election of remedies doctrine. The court denied the town's motion to dismiss Narragansett Electric's counterclaim.

On May 20, 1991, the Superior Court issued a decision based upon the parties' cross-motions for summary judgment. The trial justice found § 39-1-30 to be a constitutional enactment. However, the court ruled that the PUC lacked jurisdiction under § 39-1-30 to determine the validity of the ordinance and enjoined the PUC from conducting proceedings on Narragansett Electric's petition for review. The trial justice also ruled that the ordinance was an unlawful exercise of the town's home rule powers and was beyond the authority with which plaintiffs could act because the statutory scheme establishing the PUC preempted the ordinance. The trial justice granted the town's motion for a stay, postponing any construction of electric transmission lines until the parties' appeals were heard by this court.

I

ELECTION OF REMEDIES

■ The plaintiffs argue that by previously filing a petition for review of the ordinance under § 39-1-30, Narragansett Electric waived its right to have the Superior Court consider its counterclaim because it had elected another forum. The trial justice decided that the election of remedies doctrine did not bar Narragansett Electric's counterclaim and denied plaintiffs' motion to dismiss it. *See Wellington Hotel Associates v. Miner,* 543 A.2d 656, 659 (R.I.1988); *Easton's Point Association v. Coastal Resources Management Council,* 522 A.2d 199, 201-02 (R.I.1987). We agree with the trial justice because defendants were responding to the town's suit and were not challenging the enabling act of the PUC. We find that the election of remedies doctrine is inapposite.

II

SEPARATION OF POWERS

■ The trial justice agreed with plaintiffs' contention that the challenged statute, § 39-1-30, violates the separation of powers doctrine because it permits the executive branch, through an administrative agency, to review an enactment of the town's legislative branch. We disagree. The trial court misapplied the law.

The separation of powers doctrine prohibits the usurpation of the power of one branch of government by a coordinate branch of government. We recently stated that a " 'constitutional violation of separation of powers [is] *an assumption by one branch of powers that are central or essential to the operation of a coordinate branch.'* " *In re Advisory Opinion to the Governor (Ethics Commission),* 612 A.2d 1, 18 (R.I.1992). The PUC is an agency of the executive branch of the State of Rhode Island. The town council, however, is not a coordinate branch of the state government. The town is a creature of the state. *See Lynch v. King,* 120 R.I. 868, 876-77, 391 A.2d 117, 122 (1978); R.I. Const. art. XIII, § 4. Its conflicting or overreaching legislative enactments are subordinate to those promulgated by a branch of state government. Accordingly the PUC's review of the ordinance does not involve a coordinate branch of government exercising powers in violation of the separation of powers doctrine.

## III

## CONSTRUCTION OF STATUTE

In her decision the trial justice ruled that Narragansett Electric erroneously brought the matter regarding the validity of the ordinance before the commission. The court ruled that § 39–1–30 empowers the commission only to review municipal actions that are administrative in nature or are zoning board decisions. On appeal the parties agree that the trial court erred in construing § 39–1–30 to exclude town council ordinances from review.[2]

It is apparent that the trial court based part of its ruling upon the commission's past use of § 39–1–30 and an interpretation of its language. The court noted that prior to the time Narragansett Electric filed its challenge to the ordinance, the PUC had only exercised jurisdiction in zoning matters. The trial justice also observed that the statute refers to the word "ordinance" in the context of zoning matters and the general statutory scheme of § 39–1–30 is one that directs itself only to zoning review. Furthermore, the trial justice relied upon the title of the section in concluding that the section relates to zoning review.

In part of her analysis, the trial justice presumed that the separation of powers doctrine precluded the PUC's review of municipal ordinances. She ruled that the PUC's review extended to the town's executive actions and not to its legislative functions.

The plaintiffs and defendants contend that § 39–1–30 provides two types of review. The first part of the statute pertains to decisions of zoning boards of review and the second part applies to "[e]very ordinance enacted * * * affecting the mode or manner of operation * * * of any company under the supervision of the commission." Section 39–1–30. The parties assert that the second part of § 39–1–30 is plain and unambiguous and refers to the commission's review of ordinances that affect the mode or manner of operation of Narragansett Electric, a company under the supervision of the commission.

Legislative enactments are not always models of style and drafting. It is, however, " 'the function and duty of this court to construe statutes.' " *D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374 (R.I.1992). To discern the proper role of the PUC, it is our task " 'to establish and effectuate the intent of the Legislature.' " *Id.* "Legislative intent is determined 'through an examination of the language of the statute itself, giving the words of the statute their plain and ordinary meaning.' " *Krikorian v. Rhode Island Department of Human Services*, 606 A.2d 671, 675 (R.I.1992).

Narragansett Electric argued that the court's misapplication of the separation of powers doctrine led directly to its misconstruction of § 39–1–30. The court was reluctant to construe the meaning of the word "ordinance" to permit an executive branch agency, the PUC, to review an en-

---

**2.** General Laws 1956 (1990 Reenactment) § 39–1–30 provides:

"Zoning review—Approval of ordinances and regulations.—Every ruling, decision, and order of a zoning board of review and of a building, gas, water, health, or electrical inspector of any municipality affecting the placing, erection, and maintenance of any plant, building, wires, conductors, fixtures, structures, equipment, or apparatus of any company under the supervision of the commission, shall be subject to the right of appeal by any aggrieved party to the commission within ten (10) days from the giving of notice of the ruling, decision, or order. The commission, after hearing, upon notice to all parties in interest, shall as speedily as possible determine the matter in question, weighing the consideration of public convenience, necessi-

ty, and safety against the consideration of public zoning, and shall have jurisdiction to affirm or revoke or modify the ruling, decision, or order to make any order in substitution thereof. *Every ordinance enacted, or regulation promulgated by any town or city affecting the mode or manner of operation or the placing or maintenance of the plant and equipment of any company under the supervision of the commission,* shall be subject to the right of appeal by any aggrieved party to the commission within ten (10) days from the enactment or promulgation. The commission, after hearing, upon notice to all parties in interest, *shall determine the matter giving consideration to its effect upon the public health, safety, welfare, comfort, and convenience."* (Emphasis added.)

actment of the local legislative branch. As we discussed in the previous section, this is an erroneous foundation.

■ Equally erroneous is the trial justice's limitation of § 39–1–30 to zoning matters. When we review the trial justice's decision, it appears that her consideration of the title of the statute was misplaced. The title of an act may only aid in a court's interpretation if there is doubt about the meaning of a provision of the statute. *Fiske v. MacGregor, Division of Brunswick,* 464 A.2d 719, 727 (R.I.1983). The title does not control the meaning of § 39–1–30 when the court analyzes the plain meaning of the provisions. *See id.* In our inquiry we "look to the statutory chapter in its entirety." *Bailey v. American Stores, Inc./Star Market,* 610 A.2d 117, 119 (R.I. 1992) (citing *Carr v. Mulhearn,* 601 A.2d 946, 949 (R.I.1992)).

We agree with the contention of the parties that the second part of § 39–1–30 is plain and unambiguous and is indicative of the Legislature's intent. Absent the trial justice's preoccupation with separation of powers and zoning considerations, the word "ordinance" in § 39–1–30 is meant to include the town council's ordinance. As a whole the statute indicates that the Legislature intended the commission to have exclusive regulatory authority.

## IV

## PREEMPTION

The trial justice ruled that the town council was (1) without the authority to enact the ordinance under the home rule provisions of the Rhode Island Constitution and (2) pre-empted from acting in this field by the breadth of the statutory scheme found in title 39. We address the issues of pre-emption and home rule separately.

The plaintiffs argue that the trial justice erred in ruling that the town was without the authority to enact the ordinance. The defendants contend that the trial justice correctly decided that the town did not have the authority under the Rhode Island Constitution to prohibit the construction of electric transmission lines because the Legislature had entirely pre-empted this area of regulation.

Pre-emption works as a limitation on the exercise of inherent police powers by a governmental body when the purported regulation relates to subject matter on which superior governmental authority exists. Many years ago we issued a clear statement on the supremacy of state laws over local ordinances.

> "It is declared to be a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the state. * * * It is also recognized in this jurisdiction that an ordinance inconsistent with a state law of general character and state-wide application is invalid." *Wood v. Peckham,* 80 R.I. 479, 482, 98 A.2d 669, 670 (1953).

Whether chapter 1 of title 39 pre-empts the ordinance depends on what the Legislature intended when it enacted the statute. *Town of Glocester v. R.I. Solid Waste Management Corp.,* 120 R.I. 606, 607, 390 A.2d 348, 349 (1978).

■ We have long recognized the doctrine of implied pre-emption and do not require a clear statement by the Legislature of its intention to pre-empt local legislation. *Rhode Island Cogeneration Associates v. City of East Providence,* 728 F.Supp. 828, 834 n.12 (D.R.I.1990) (citing *Wood v. Peckham,* 80 R.I. 479, 483, 98 A.2d 669, 670–71 (1953)). Generally, state laws of statewide application pre-empt municipal ordinances on the same subject if the Legislature intended that they thoroughly occupy the field. *Easton's Point Associates, Inc. v. Coastal Resources Management Council,* 559 A.2d 633, 636 (R.I.1989). Thus East Greenwich's ordinance will be declared invalid if it disrupts the state's overall scheme of regulation on public-utility issues.

We have recently recognized the intent of the General Assembly to vest the commission with exclusive authority to regulate public utilities. Our decisions in *South County Gas Co. v. Burke,* 551 A.2d 22 (R.I.1988), and *In re Woonsocket Water Department,* 538 A.2d 1011 (R.I.1988), are particularly instructive in this matter.

In both *South County Gas Co.* and *Woonsocket Water Department* we examined the Legislature's intent in § 39–1–1. We noted that "[t]he commission has 'the *exclusive* power and authority to supervise, regulate and make orders governing the conduct'" of public utilities. (Emphasis added.) *Woonsocket Water Department*, 538 A.2d at 1014 (quoting § 39–1–1). In each case we underscored the comprehensive approach that the commission brings to resolving collective-action problems concerning public utilities. As set forth in title 39, "the Legislature intended to establish a qualified administrative body to evaluate technical evidence, address the myriad of complex problems associated with regulatory proceedings, and render intelligent decisions." *South County Gas Co.*, 551 A.2d at 25.

Since the passage of the Public Utilities Act in 1912, the General Assembly has imparted vitality to the PUC by giving it the power and the jurisdiction to enforce its regulations. Title 39 is replete with examples of the broad reach of the commission's authority. Furthermore the complex regulatory scheme of title 39 provides sufficient avenues of redress for municipal concerns. As discussed in the trial justice's decision, towns may directly initiate investigations when the service of a public utility is unsafe or the public safety is endangered. Section 39–4–3.

We are aware that in addition to the implied pre-emption of the ordinance discussed above, the Legislature recently amended title 39 to include the regulation of certain transmission lines within the jurisdiction of the Energy Facilities Siting Board (EFSB). After the trial justice's ruling, the Legislature enacted the Electric Transmission Siting and Regulatory Act (Siting Act Amendment). *See* chapter 25 of title 39; G.L.1956 (1988 Reenactment) § 42–98–3, as amended by P.L.1992, ch. 439, § 1; § 42–98–8, as amended by P.L. 1992, ch. 439, § 1.

The principal effect of the Siting Act Amendment is to make all transmission lines of sixty-nine kilovolts and over subject to the jurisdiction of the EFSB. Section 42–98–3(A). Moreover, the language of the amendment directly addresses the health and safety concerns of the town council. *See* section 39–25–2, as amended by P.L. 1992, ch. 439, § 1. Section 42–98–8 provides in part:

"Where applicable * * * descriptions and analysis shall include a review of current independent, scientific research pertaining to electric and magnetic fields (EMF). Said review shall provide data assessing potential health risks associated with EMF exposure. For purposes of this chapter 'prudent avoidance' shall refer to measures to be implemented in order to protect the public from EMF exposure."

The Siting Act Amendment confirms preemption. *See also Rhode Island Cogeneration Associates v. City of East Providence*, 728 F.Supp. 828 (D.R.I.1990). By bringing transmission lines within the EFSB's jurisdiction and instructing the EFSB to consider the effects of electromagnetic fields, the General Assembly has more directly pre-empted future municipal enactments in this area.

In the matter before us, we find that the town's ordinance has been pre-empted because it invaded a field that the state has intentionally occupied. An express legislative grant of power to a regulatory commission to control the transmission of electricity precludes a town from passing ordinances regarding the safety aspects of the same subject matter. *Detroit Edison Co. v. Township of Richmond*, 150 Mich.App. 40, 50, 388 N.W.2d 296, 300 (1986). In our examination of title 39 as a whole, and §§ 39–1–1 and 39–1–30 in particular, it is our opinion that the General Assembly has expressed its intent to cover the field of public-utilities regulation. The Legislature has declared that the PUC has exclusive power to regulate public utilities and vested it with the authority to carry out that regulation. We affirm the decision of the trial justice on this issue.

## V

## HOME RULE

The town contends that by subjecting the ordinance to review by the PUC, it is imper-

missibly divested of its right to self-government. The town asserts that it enacted Ordinance No. 553 pursuant to its authority "[t]o enact, amend or repeal ordinances for the preservation of the public peace, the health, safety, comfort and welfare of the inhabitants of the Town and for the protection of persons and property." East Greenwich Home Rule Charter, art. III, § 3170A. The trial justice ruled that in enacting the ordinance, the town council acted beyond its authority under the home rule provisions of the Rhode Island Constitution. *See* R.I. Const. art. XIII.

Rhode Island's Home Rule Amendment extends authority to every city and town to enact a home rule charter. It grants municipalities "the right of self government in all local matters" as long as its legislation is "not inconsistent with this Constitution and laws·enacted by the general assembly in conformity with the powers reserved to the general assembly." R.I. Const. art. XIII, secs. 1 and 2. When the town adopted its charter, it in effect adopted the general law of the state. The home rule charter for the town of East Greenwich vests legislative powers with the town council, provided its ordinances are "not inconsistent with the State Constitution and laws enacted by the General Assembly in conformity with the powers reserved to the General Assembly." East Greenwich Home Rule Charter, art. III, § 3170.

■ We have long recognized that cities and towns that have adopted home rule charters are free to exercise authority over purely local concerns. *Westerly Residents for Thoughtful Development, Inc. v. Brancato*, 565 A.2d 1262, 1264 (R.I.1989). "Municipalities may not, however, legislate on matters of statewide concern. The power of the General Assembly remains exclusive in those areas." *Id.* A municipality, as a creation of the state, has only such powers as are delegated to it by the state. As set forth in article XIII, section 4, of the Rhode Island Constitution, the General Assembly has the "power to act in relation to the property, affairs and government of any city or town by general laws which shall apply alike to all cities and towns."

*See Bruckshaw v. Paolino*, 557 A.2d 1221, 1223 (R.I.1989).

In *Bruckshaw*, we expressed a sentiment common to many jurisdictions when we stated that absent a direct conflict between a local ordinance and a state statute, "the constitution and general laws are devoid of guidelines defining the parameters of 'local' and 'general' legislation." *Id. See McCarthy v. Johnson*, 574 A.2d 1229, 1231 (R.I.1990); *see generally* 2 E. McQuillin, *The Law of Municipal Corporations* § 4.85 at 206–08, § 4.89 at 214 (3d ed.1988).

■ Upon review we are aware that our opinions that define the limits of the local-general equation may be more clearly discerned with the aid of three variables. *See* 1 C. Antieau, *Municipal Corporation Law* § 3.40 (1991); 2 McQuillin, § 4.85. First, when it appears that uniform regulation throughout the state is necessary or desirable, the matter is likely to be within the state's domain. 1 Antieau, § 3.40 at 3–113. Second, whether a particular matter is traditionally within the historical dominion of one entity is a substantial consideration. 1 Antieau, § 3.40 at 3–115; *see Marro v. General Treasurer of Cranston*, 108 R.I. 192, 196, 273 A.2d 660, 662 (1971); *Nugent v. City of East Providence*, 103 R.I. 518, 524–26, 238 A.2d 758, 761–63 (1968); *Opinion to the House of Representatives*, 80 R.I. 288, 294, 96 A.2d 627, 630 (1953); 2 McQuillin, § 4.85 at 206. Third, and most critical, if the action of a municipality has a significant effect upon people outside the home rule town or city, the matter is apt to be deemed one of statewide concern. 1 Antieau, § 3.40 at 3–115 to 3–119; 2 McQuillin, § 4.85 at 208; *see McCarthy*, 574 A.2d at 1231; *Brancato*, 565 A.2d at 1264; *Bruckshaw*, 557 A.2d at 1223.

■ We now filter the town's ordinance through the standards outlined above. The ordinance attempts to regulate the transmission of high-voltage power within the town's borders. At oral argument Narragansett Electric stated that since the passage of the ordinance, three nearby municipalities had enacted similar legislation. Consequently we are concerned that patchwork electrical-transmission legislation will

handicap compliance with safety regulations and inhibit the efficient distribution of electrical power.

Notwithstanding Rhode Island's broad home rule powers, public-utility regulatory policy requires uniform regulation. As the Supreme Court of New Jersey noted, "It is rather difficult to conceive of a subject which more requires uniform regulation at a high and broad level of authority than the method of transmission of electric power, especially where it must be generated in a single location and distributed and used in many and distant places." *In re Public Service Electric and Gas Co.*, 35 N.J. 358, 373, 173 A.2d 233, 240–41 (1961). The commission's interest is in the "safety of the proposed line, the capacity of the line, the need for the line, and its total relation to the maintenance of electrical service to the people" of the state. *Detroit Edison Co.*, 150 Mich.App. at 51, 388 N.W.2d at 300–01. Conversely, the town's "narrow area of concern is for * * * the community through which the line passes." *Id.* at 51, 388 N.W.2d at 301. We recognize that a comprehensive approach would be impossible if each town were permitted to assert control over the method of transmitting electrical power within its boundaries.

The actions of one town concerning the transmission of electric power throughout the state necessarily affect the residents of other localities.

"Were each municipality through which a power line has to pass free to impose its own ideas of how the current should be transmitted through it, nothing but chaos would result, and neither the utility nor the state agency vested with control could be assured of [the] ability to fulfill its obligations of furnishing safe, adequate and proper service to the public in all areas." *In re Public Service Electric and Gas Co.*, 35 N.J. at 373, 173 A.2d at 241.

It is beyond cavil to state that the ordinance imposes undesirable penalties upon surrounding municipalities. Compliance with the ordinance would force Narragansett Electric to transmute its electrical distribution network into an unwieldy leviathan that would unnecessarily snake through many extra miles of the state.

Considering the need for uniformity and the extra-territorial effect of the ordinance, we agree with the decision of the trial justice that the town council's action was impermissibly one of statewide character. Thus, the ordinance constitutes an action *ultra vires* of the authority delegated by the home rule charter to the East Greenwich Town Council.

## VI

## DELEGATION

■ The plaintiffs argue that the Legislature impermissibly delegated its powers to an administrative agency. In empowering the PUC to review the ordinance, plaintiffs contend that the General Assembly has violated the nondelegation doctrine.

The nondelegation doctrine is derived from article VI, sections 1 and 2, of the Rhode Island Constitution. These sections provide that "[t]his Constitution shall be the supreme law of the state" and that the legislative power thereunder shall be vested in the General Assembly. We have interpreted these provisions of our state constitution to forbid the unconditional delegation of legislative power. *Milardo v. Coastal Resources Management Council*, 434 A.2d 266, 270 (R.I.1981). "The purpose of the nondelegation doctrine is to protect the citizens against arbitrary and discriminatory action by public officials." *Davis v. Wood*, 427 A.2d 332, 335 (R.I 1981). In addition it ensures "that basic policy choices will be made by duly authorized and politically responsible officials." *Bourque v. Dettore*, 589 A.2d 815, 817 (R.I. 1991). Echoing these concerns, our case law has focused on the need for both reviewable standards and conflict resolution in properly equipped forums.

As a practical matter, rigid adherence to doctrinaire notions of the nondelegation doctrine would unduly hamper the Legislature's exercise of its constitutionally vested powers. *Milardo*, 434 A.2d at 270. Therefore, we have relaxed our analysis of the nondelegation doctrine to enable the Legis-

lature to carry out its responsibilities through administrative bodies. *J.M. Mills, Inc. v. Murphy,* 116 R.I. 54, 61, 352 A.2d 661, 665 (1976). To aid our review of legislative delegations, we have often recognized that the discharge of certain legislative functions involving complex statutory schemes or factfinding frequently necessitates administrative expertise. *Id.* Furthermore, in such situations an administrative agent must have flexibility to effectuate the purposes of legislation. *Milardo,* 434 A.2d at 270; *see Davis,* 427 A.2d at 335–36.

Administrative agencies provide help to the Legislature in its search for efficient ways of working out detailed regulatory objectives. The PUC is an appropriate forum for deliberation and fact-finding involving electromagnetic fields. As an administrative body it has the means to entertain complex issues. Not only does chapter 1 of title 39 provide the commission with the resources available to gather and evaluate the scientific, safety, and economic data involved but it also grants access to all the affected parties. *See South County Gas Co.,* 551 A.2d at 25.

In the second part of our analysis of the constitutionality of the legislative delegation in § 39–1–30, "we examine the specificity of the functions delegated, the standards accompanying the delegation, and the safeguards against administrative abuse." *Bourque,* 589 A.2d at 818. As long as the statute "declares a legislative purpose, establishes a primary standard for carrying out the use, or lays out an intelligent principle to which an administrative officer or body must conform," this court shall, as we have in the past, sustain the delegation. *Id.* (quoting *Davis,* 427 A.2d at 336). "In determining whether a statute contains sufficient standards, we must read the act as a whole; the provision in question should not be isolated, but must be construed with reference to the entire act." *Davis,* 427 A.2d at 336.

We begin our analysis with the specificity of the functions delegated by § 39–1–30. The statute limits the commission's review to actions of zoning boards and municipal inspectors and those involving regulations and ordinances. By its terms the statute confers the limited function of granting jurisdiction to the PUC to hear appeals by any party aggrieved by an action involving a public utility.

Next we examine whether standards exist to govern the delegation of authority. Considering the act in its entirety, we find the legislative purpose set forth in § 39–1–1(a)(2): "Supervision and reasonable regulation by the state * * * to protect and promote the convenience, health, comfort, safety, accommodation, and welfare of the people." [3] These guidelines are reiterated

---

3. Section 39–1–1 provides in relevant part:
 "Declaration of policy—Purposes.—(a) The general assembly finds and therefore declares that:
 \* \* \* \* \* \*
 (2) Supervision and reasonable regulation by the state of the manner in which such businesses construct their systems and carry on their operations within the state are necessary to *protect and promote the convenience, health, comfort, safety, accommodation, and welfare of the people,* and are a proper exercise of the police power of the state;
 (3) Preservation of the state's resources, commerce, and industry requires the assurance of adequate public transportation and communication facilities, water supplies, and an abundance of energy, all supplied to the people with reliability, at economical cost, and with due regard for the preservation and enhancement of the environment, the conservation of natural resources, including scenic, historic, and recreational assets, and the

strengthening of long-range, land-use planning.
 (b) It is hereby declared to be the policy of the state to provide fair regulation of public utilities and carriers in the interest of the public, to promote availability of adequate, efficient and economical energy * * *.
 (c) To this end, there is hereby vested in the *public utilities commission* and the division of public utilities and carriers the *exclusive power and authority to supervise, regulate, and make orders governing the conduct of companies offering to the public in intrastate commerce energy,* communication, and transportation services and water supplies for the purpose of increasing and maintaining the efficiency of the companies, according desirable safeguards and convenience to their employees and to the public, and *protecting them* and the public against improper and unreasonable rates, tolls and charges by providing full, fair, and adequate administrative procedures and remedies, and by securing a judi-

as part of the mandatory language of § 39–1–30 itself. The statute requires the commission to "determine the matter giving consideration to its effect upon the public health, safety, welfare, comfort, and convenience." Section 39–1–30.

Mindful that the disputed statute must be viewed in context, we next consider the safeguards against administrative abuse. In addition to the determinations that the commission is required to make, several sections guard against arbitrariness. Section 39–1–11 charges the PUC with independence and impartiality, § 39–1–18 requires that all proceedings are a matter of public record, and § 39–1–33 calls for annual reporting to the Governor and the General Assembly. Section 39–1–35 guards against conflicts of interest, and § 39–1–5 permits the Governor to remove commissioners from office for inefficiency, neglect, or malfeasance. Sections 39–1–19 and 39–1–20 furnish the commission with ample professional and technical advice. Finally, should these safeguards prove ineffective, § 39–5–1 provides for review by this court.

Thus, we find that the specificity of the functions delegated and the accompanying standards of § 39–1–30 and the administrative safeguards of chapter 1 of title 39 are sufficient to form a constitutional delegation of legislative power.

When acting under § 39–1–30, the PUC is exercising quasi-judicial authority. Section 39–1–3. The PUC has no power to enforce its own decisions and relies on the authority of the Superior Court. Section 39–1–7(a) requires the PUC to enforce its judgments "by any suitable process issuable by the superior court." As we have in the past, we approve of this delegation of quasi-judicial power. *Providence Gas Co. v. Burke*, 419 A.2d 263, 270 (R.I.1980); *see Sartor v. Coastal Resources Management Council*, 542 A.2d 1077, 1079–81 (R.I.1988).

Having decided that § 39–1–30 is a constitutional delegation of the Legislature's power, we need not reach the issues of

vagueness and overbreadth raised by the plaintiffs. After reviewing the plaintiffs' other contentions set forth in their appeal, we summarily find them to be without merit; they are therefore denied and dismissed.

The plaintiffs' appeal is denied in part and sustained in part. The defendants' appeal is sustained. Accordingly the judgment of the Superior Court is reversed in part and affirmed in part. We vacate the Superior Court's restraining order. All other portions of the judgment are affirmed. The ordinance is null and void. The records certified to this court are remanded to the Superior Court for further proceedings consistent with this opinion.

cial review to any party *aggrieved by such an* administrative proceeding or ruling." (Em-

phasis added.)